**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,**<br><br>                              Plaintiff,<br><br>              v.<br><br>**UNITED STATES**,<br><br>                              Defendant. | Court Number 09-00153 |

<u>**COMPLAINT**</u>

Plaintiff, by its attorneys, Barnes, Richardson & Colburn, for its complaint against the United States, alleges as follows:

<u>INTRODUCTION</u>

1.      Western Greenfield Corp. ("WGC") is the importer of record in this matter.

2.      In June and July 2005, WGC imported entry numbers 906-0256121-0 and 906-0256014-7, which consisted of canned mushrooms produced and exported by Guangxi Yulin Oriental Food Co., Ltd/ ("Yulin"), at the port of San Francisco, California.

3.      Western Overseas Corp. ("Overseas"), a customs broker, entered the merchandise in entry numbers 906-0256121-0 and 906-0256014-7 under subheading 2003.10.01, Harmonized Tariff Schedule of the United States ("HTSUS") and identified antidumping ("AD") duty order A-570-851-020 as applicable to those entries.

4. A continuous bond (number 990316655) was prepared and executed which was allegedly guaranteed by Hartford Fire Insurance Company ("Hartford").

5. The U.S. Department of Commerce ("Commerce") published notice of Final Results of Antidumping Duty Administrative Review for certain mushrooms from the People's Republic of China covering the period February 1, 2005 through January 31, 2006. See 72 Fed. Reg. 44,827 (August 9, 2007).

6. Customs liquidated the entries at issue in December 2007, subject to AD order A-570-851-037 at a rate of 198.63%.

7. In March 2008, Hartford received a demand letter for payment of AD duty for entry numbers 906-0256121-0 and 906-0256014-7.

8. Hartford timely protested the demand for payment and Customs denied Hartford's protest on October 17, 2008.

## JURISDICTION AND STANDING

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a) in that the action was timely filed within six months of the denial of Hartford's protest.

10. Hartford is the surety and the party-in-interest in this action and has standing to bring this action pursuant to 28 U.S.C. § 2631(a).

## FIRST CAUSE OF ACTION

11. Hartford repeats and re-asserts allegations 1 through 10 of this complaint.

12. Congress passed the Antidumping Duty Act of 1921 to "provide revenue and encourage domestic industries by the elimination, through the assessment of special duties, of unfair foreign competition . . . ." H.R. Rep. No. 479, 66th Cong., 2d Sess. 1 (1919).

13. To fulfill that intention, Congress required that each entry be backed by a bond for the value of the merchandise.

14. On October 28, 2000, Congress enacted the Continued Dumping and Subsidy Offset Act ("CDSOA"). Pub. L. No. 106-387, 114 Stat. 1549 (2000).

15. As a result of passage of the CDSOA, AD duties collected are no longer treated as revenue to the United States because such duties are no longer deposited with the U.S. Treasury for general purposes.

16. Pursuant to the CDSOA, duties assessed and collected pursuant to U.S. AD law are now distributed as subsidizing compensation to the domestic U.S. firms that petitioned for relief under the AD duty laws, and to those other companies that supported the petition (hereafter collectively referred to as the "domestic industry").

17. Congress authorized Customs to prescribe the forms of entries, oaths, and bonds in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports. See, e.g., 19 U.S.C. § 66.

18. Prior to the enactment of the CDSOA, Customs promulgated 19 C.F.R. §113.62, which imparts the conditions of a basic importation and entry bond, securing the payment of "duties, taxes and charges" by the disclosed principal and disclosed surety.

19. The language on the face of the Bond incorporates the conditions set out at 19 C.F.R. §113.62, and identifies the "Department of the Treasury, United States Customs Service" (hereafter collectively referred to as the "United States"), as the obligee of the bond.

20. The language of the Bond expressly binds the principal(s) and surety(ies) to the United States, for any "duty, tax or charge . . . ."

21. Since the enactment of the CDSOA, Customs has not changed either the bond requirements of 19 C.F.R. Part 113 or the contractual language on the face of the Bond to reflect changes brought about by the CDSOA and the fact that AD duties are now collected for, and paid as compensation to, parties other than the United States.

22. Neither 19 C.F.R. Part 113 nor the language on the Bond obligates a principal or a surety to pay AD duties for the benefit of a party other than the United States.

23. As a result of the CDSOA, the principal in this action was obligated to pay AD duties assessed against it to the domestic industry. In addition, the domestic industry maintains that, as a matter of law, the CDSOA has made it a direct and third-party beneficiary of the Bonds.

24. To the extent the domestic industry is correct, as a matter of law, that the CDSOA transformed it into a direct and third-party beneficuary of the Bonds, Hartford did not expressly agree to fulfill Farmland's obligation to pay AD duties for the benefit of the domestic industry on the entries subject to this action.

25. Hartford did not expressly agree to fulfill WGC's obligation to pay AD duties for the benefit of the domestic industry on the entries subject to this action.

26. WGC's obligation to pay AD duties on the entries subject to this action for the benefit of the domestic industry rather than the United States modified Hartford's obligations under the Bond at issue, thus releasing Hartford from all obligations under the Bond.

## SECOND CAUSE OF ACTION

27. Hartford repeats and re-asserts allegations 1 through 26 of this complaint.

4

28. The express contractual language of the Bond issued to secure the entries at issue contains no language obligating either the principal or the surety to make payment of a "duty, tax or charge" to a party other than the United States.

29. A surety's liability is not extended by implication beyond the terms of the contract, which is strictly interpreted against the drafter. See United States v. Freel, 186 U.S. 309, 316 (1902).

30. The defendant drafted the Bond at issue herein.

31. The Bond at issue herein, like all Customs bonds where the United States is the obligee, is a printed form ("Customs Form 301").

32. The Bond does not secure the payment of a "duty, tax or charge" for the benefit of a party other than the disclosed obligee.

33. As evidenced by the express language of the Bond, Hartford had no intention, express or implied, to underwrite bonds to secure payment of duties, taxes or charges for the benefit of the domestic industry.

34. Because Hartford is not obligated under the express language of the Bond to secure payments of duties, taxes or charges for payment to the domestic industry, and because the Bond should be strictly interpreted against the drafter, the Bond cannot be enforced in favor of the defendant and Hartford is released from its obligation under the Bond at issue.

## THIRD CAUSE OF ACTION

35. Hartford repeats and re-asserts allegations 1 through 34 of this complaint.

36. The Bond at issue jointly and severally obligated the importer as principal and Hartford as surety to pay the United States "duties, taxes and charges" arising out of the entries at issue.

37. Under the CDSOA, AD duties are now distributed to the domestic industry as compensation.

38. Customs collects the AD duties and then distributes them to the domestic industry pursuant to the terms of the CDSOA.

39. Money paid to the United States by a surety based on its promise to secure an importer's payment of duties, but which is, in fact, distributed to the domestic industry as compensation for dumping, results in payments inuring to unidentified third parties and not the disclosed obligee.

40. As such, the domestic industry has an increased financial incentive to bring or support the finding of AD against foreign manufacturers and exporters.

41. A surety is discharged from its obligations under a bond contract if the bond is materially altered or changed without the surety's knowledge or consent and where the alteration caused prejudice to the surety.

42. The enactment of the CDSOA materially increased Hartford's risk of loss under the Bond by increasing its potential cost of performance and increasing the number, nature, and motivation of the domestic CDSOA claimants.

43. When an obligee acts to increase the secondary obligor's risk of loss without that secondary obligor's express consent, the secondary obligor is discharged from its obligations under the Bond.

44.  The domestic industry's increased financial incentive to seek the imposition of AD duties prejudiced Hartford and became an increased risk to which Hartford had not expressly consented such that the Bond, which is intended to guaranty the payment of revenue to the United States, is now, under the CDSOA, a guaranty of compensation to the domestic industry.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment sustaining the claims made herein, ordering that the Bond is unenforceable as against Hartford; that all claims made against Hartford under the Bond be cancelled; that any monies paid by Hartford to the defendant relative to the entries at issue be refunded with interest as allowed by law; and ordering any other relief that this court deems just and proper.

                                          Respectfully submitted,

                                          BARNES, RICHARDSON & COLBURN
                                          Attorneys for Plaintiff
                                          475 Park Avenue South
                                          New York, New York 10016
                                          Tel: (212) 725-0200

                                          /s/ _____
                                                Frederic D. Van Arnam, Jr.
                                                Eric W. Lander

Dated:  April 15, 2009
        New York, New York